UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

SYLVESTER BUSH,

    **Plaintiff,**

v.                                                            Civil Action No: 1:13-cv-1706-CRC

EXPERIAN INFORMATION SOLUTIONS, INC.
and
TRANS UNION, LLC.,
and
AARGON AGENCY, INC.,

    **Defendants**

### PLAINTIFF'S OPPOSITION TO DEFENDANT AARGON AGENCY INC.'S MOTION TO SET ASIDE DEFAULT

    COMES NOW the Plaintiff, SYLVESTER BUSH, by counsel, to oppose Aargon Agency Inc.'s Motion to Set Aside Default.

### Introduction

    It is true that default judgments are generally disfavored by courts, including within the D.C. Circuit, because it is viewed as contrary to the fair administration of justice. *Jackson v. Beech,* 636 F.2d 831, 835 (D.C.Cir.1980). Federal Rule of Civil Procedure 55(c) permits a court, in its sound discretion, to set aside entry of default for "good cause." *Keegel v. Key West & Caribbean Trading Co.,* 627 F.2d 372, 373 (D.C.Cir.1980)." Rule 60(b)(1) provides for relief from a final judgment arising from a defendant's "mistake, inadvertence, surprise, or excusable neglect." Whether default has been entered by the clerk or default judgment has been entered by the court, in deciding whether to set aside an entry of default or default judgment, the court must

evaluate the same three factors under either standard. *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.,* 288 F. Supp. 2d 22, 25-31 (D.D.C. 2003)

The factors to be considered are whether: (1) the default was willful, (2) the alleged defense was meritorious, and (3) a set-aside would prejudice plaintiff. *Jackson,* 636 F.2d at 835 (quoting *Keegel,* 627 F.2d at 374).[1]

## Argument

In this case, it is clear that default was willful. Defendant had more than two months to locate local counsel, enter and appearance and to file a responsive pleading. Despite filing the Declaration of Trent Richards with its motion to set aside default, Defendant has not offered any cognizable justification for its failure to plead to the Complaint, or supplied any details demonstrating that it diligently attempted to comply with its obligation to Answer or file a responsive pleading. On March 10, 2014, the Court entered a Minute Order to the Plaintiff to Show Cause by March 31, 2014, as to why it had failed to move for default judgment and why the case should not be dismissed for want of prosecution as to that defendant. Plaintiff's counsel immediately contacted Defendant's counsel, Trent Richards, who represented that his associate

---

[1] The cases cited by Aargon in support of its motion to set aside the default could not be more different than the facts in this case. First, in *Keegel v. Key West & Caribbean Treating Co., Inc.*, the appellate court reversed the district court's decision to refuse to set aside a default where the party against whom default was taken was not represented by counsel and where the party that sought default had lied to the pro se party about the date on which an Answer was due and that it would not seek default. 627 F.2d 372, 373 (D.C. Cir. 1980). In *Jackson v. Beech*, the court found that it was erroneous for the district judge to deny a motion to set aside default judgment where the court improperly imputed the negligence of the defaulting party's attorney to the party itself. *Jackson*, 636 F.2d 831, 835 (D.C.Cir. 1980). In *Shatsky v. Syrian Arab Republic*, the court found that despite the fact that the defendant had willfully defaulted, the Plaintiff failed to demonstrate that she would suffer legal prejudice from a loss of evidence where the parties were on notice to preserve evidence since the inception of the case. 795 F.Supp.2d 79, 82 (D.D.C. 2011). Even though a meritorious defense is an extremely low bar to articulate, in *Shatsky*, the meritorious defense was especially so since the Defendant claimed that it had been improperly joined because it was not at all the actual party responsible for the

had made an application for admission to the D.C. District Court. (Bennett Decl. ¶ 5)(Doc. 21-1). Plaintiff's counsel informed him Mr. Richards that Plaintiff would not seek default without notice. (Bennett Decl. ¶ 5.) Despite having been informed of the Show Cause Order, Defendant did not respond in any way to Plaintiff's counsel. . (Bennett Decl. ¶ 6.) Neither Mr. Richards nor his associate, Renee Gordon, entered an appearance. . (Bennett Decl. ¶ 6.) After that, on March 18, 2014, Plaintiff's counsel informed Mr. Richards in writing that hearing nothing, Plaintiff would take default on March 21, 2014. (Bennett Decl. ¶ 8.) Mr. Bennett sent another email the next day, March 19, 2014, warning that "we take default Friday." (Bennett Decl. ¶ 10.)[2] Neither Mr. Richards, Ms. Gordon, Mr. Canter, nor anyone at Aargon responded to Mr. Bennett, no one entered an appearance until the motion to set aside default was filed on April 8, 2014. Plaintiff waited until March 24, 2014, to request entry of default, which was entered on March 25, 2014. (Doc. 18.)

Aargon submitted its Motion to Set Aside the default two weeks later, before a final judgment could issue. It is appropriate to apply the Rule 55(c) standard, under which the Defendant is not entitled to relief. The Defendant's newly retained attorney indicated by email he would move to set aside default based on what he believed were sufficient grounds. Defendant's counsel never articulated those grounds prior to filing the motion, and absent any rational explanation to set aside the default, Plaintiff's counsel indicated Plaintiff would object to setting aside default.

**I. The Defendant's failure to answer, file a responsive pleading or otherwise appear in this action was willful.**

---

terrorist acts alleged in the Complaint, but that a different organization was in fact responsible.

It is not necessary to find that Aargon acted in bad faith in order to conclude that it acted "willfully" in its failure to appear, answer or respond to the Complaint. *Int'l Painters,* 288 F. Supp. 2d at 30 (relying on *Gucci Am., Inc. v. Gold Center Jewelry,* 158 F.3d 631, 635 (2d Cir.1998)). This court has found that the "boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *Id.* (relying on a case where the court reversed a district court's vacation of default judgment where defendants were aware that a lawsuit was pending against them yet made a deliberate decision not to respond). If the Defendant relied upon representations made by Plaintiff's counsel, it may mitigate an otherwise intentional failure to respond if the court is convinced that such reliance was made in good faith. *Id., (*citing *Keegel,* 627 F.2d at 374).

Defendant in this case willfully failed to respond, despite the fact that it knew that there was a pending Order to Show Cause.  Plaintiff's counsel had communicated that Plaintiff would not seek default without providing notice to the Defendant first.  After that communication, Defendant never responded to Plaintiff again.  As promised, the Plaintiff provided timely, written notice to the Defendant that he would seek default on a date certain if there was no response.  The Defendant cannot possibly argue that it relied on any representation by counsel, other than Plaintiff would do exactly what it did in this case, provide notice and then request entry of default.

Instead of engaging local counsel, as it has done in other district courts throughout the country, Defendant states it attempted to get admitted to the court *Pro Hac Vice*.  Although the

---

[2] Mr. Richards declaration incorrectly states it was March 19, 2014, that Mr. Bennett first emailed him to advise that Plaintiff would take default. (Richards Decl. ¶ 11.) Mr. Bennett's declaration and the attached email demonstrate it was March 18, 2014. (Bennett Decl.

Defendant is entitled to the attorney of its choice, it is routine to either obtain local counsel or to determine whether an attorney will be admitted to practice in the D.C. District Court. Plaintiff's counsel was able to determine in minutes that Aargon had previously retained attorneys from the law firm of Rubenstein & Cogan, which has attorneys admitted to practice in the District Court for the District of Columbia. (Rotkis Decl. ¶ 8). Mr. Richards' declaration states that he "engaged in efforts to locate counsel to represent Aargon in this matter and was arranging for *Pro Hac Vice* admission through local counsel" but that "efforts to arrange for *Pro Hac Vice* admissions were going to be unsuccessful because the attorney . . . was only admitted to the District of Columbia Bar." (Richards Decl. ¶¶ 9 – 12). He advised his client to retain local counsel at that point, but didn't retain local counsel until April 3, 2014, nearly three months after being served with the complaint. (Richards Decl. ¶¶ 13, 15). At a minimum, as a member of ACA International, the Association of Credit and Collection Professionals, Defendant could have requested a referral from the Member Attorney Program, or called its carrier to obtain the name of a D.C. attorney admitted to practice in the district court. It could have asked one of the co-defendants for a referral. It could have checked Pacer to see the names of attorneys that defend consumer finance cases. It is impossible to know from Mr. Richards' Declaration what he or his client did to obtain counsel.

     Defendant has also chosen to suffer default in other district court cases. A cursory view of cases on Pacer where Aargon was a party in a civil action also revealed that default was entered against Aargon for failure to plead to the Complaint or otherwise appear in several federal cases. (Rotkis Decl. ¶ 9). By all the uncontroverted evidence in this case, there is no question but that Aargon knew that it was obliged to answer or respond to the Complaint, it was

on notice of the Order to Show Cause, it was on notice that Plaintiff would request entry of default.

After service of the Complaint and prior to the Order to Show Cause, counsel for both sides discussed the possibility of settlement. However, shortly after Plaintiff's counsel called Mr. Richards following entry of the Order to Show Cause, all communication by Defendant ceased. There is no reasonable argument that the Defendant could have been relying on the settlement discussions to excuse it from its obligation to respond to the Complaint. *Int'l Painters,* 288 F. Supp. 2d at 26-27 (reasoning that "relying on the mere existence of settlement negotiations as an excuse for failing to fulfill its responsibilities to the Court, however, defendant has failed to protect its own interests in this litigation" *citing Simon v. Pay Tel Mgmt., Inc.,* 782 F.Supp. 1219, 1226 (N.D.Ill.1991) (refusing to vacate default judgment). "Having chosen this manner of proceeding, [defendant] also chooses the consequences." *Brand v. NCC Corp.,* 540 F.Supp. 562, 564 (E.D.Pa.1982) (defendant was not entitled to vacation of a default judgment where it intentionally decided to ignore court action and instead engaged counsel to negotiate settlement but not to litigate); *see also Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.,* 925 F.2d 226, 229 (7th Cir.1991) (where a party willfully abdicates its responsibilities to the court, relief from judgment is not warranted)).

In this case, even though there were settlement negotiations, Aargon did not make "a good faith effort to adhere to the rules of the court and to protect its rights." Since it had no basis to ignore its obligations to file an answer, especially after plaintiff's counsel made it abundantly clear that Plaintiff would seek default if the case were not resolved and the Defendant failed to Answer. *Int'l Painters,* 288 F. Supp. 2d at 27-28 (quotations omitted). "Parties engaged in litigation frequently discuss the possible settlement of their disputes, but the mere existence of

such negotiations, without more, does not excuse the parties from attending court appearances and otherwise complying with the Court's orders." *Id*. (quoting *Simon,* 782 F.Supp. at 1226; *see also Fed. Sav. & Loan Ins. Corp. v. Kroenke,* 858 F.2d 1067, 1070–71 (5th Cir.1988) (defendant's belief that no adverse actions would be taken against him until settlement negotiations had ceased did not excuse him from filing an answer as directed by the court); *United States v. Topeka Livestock Auction, Inc.,* 392 F.Supp. 944, 951 (N.D.Ind.1975) (ongoing settlement negotiations are not a sufficient reason for a failure to file an answer)).

Thus, Aargon cannot demonstrate good cause to vacate the default judgment against it simply because the parties were engaged in settlement conversations. Defendant's attempt to argue that this case is similar to *Keegel* is also unavailing. The plaintiff in *Keegel* wrote to the defendant reaffirming his willingness to settle, granting an informal extension to file an answer, and agreeing not to seek default judgment before a specified date. *Keegel,* 627 F.2d at 373. The plaintiff, however, breached his informal agreement and sought default before the extension expired. *Id.* Because the defendant had relied in good faith on the plaintiff's promise not to seek a default, the Circuit Court concluded that defendant's failure to respond was not willful. *Id.*

In this case, Aargon never requested consent to file a late answer and merely wanted to discuss settlement. Plaintiff's counsel agreed not to take default without providing notice, which agreement was premised on continuing communication. Thus, unlike the plaintiff in *Keegel,* the Plaintiff here adhered to its agreement not to seek a default without providing notice. Moreover, Aargon was on notice, pursuant to Court Order, that the Plaintiff was obligated to request default (or to show cause why a motion for entry of default had not been filed) or risk dismissal for failure to prosecute.

Instead of demonstrating that its actions were not willful, Aargon argues that it simply couldn't find local counsel in time to avoid entry of default. Aargon's conduct demonstrates willful default, and does not demonstrate excusable neglect, or "good cause" for a set-aside. *See Merrill Lynch Mortgage Corp. v. Narayan,* 908 F.2d 246, 251 (7th Cir.1990) (affirming district court's refusal to set aside entry of default and entry of judgment where plaintiff twice threatened to move for default if an answer was not forthcoming); *Zuelzke,* 925 F.2d at 229 (where there was no showing that defendant was misled by plaintiff into believing that no harm would come to it through its failure to act, refusal to vacate judgment was proper). Aargon has been in over 50 federal civil actions in United States District Courts, and has not offered any reason that it did not protect its rights or obligations in this litigation.

## II.     There are no meritorious defenses.

When moving to set aside a default, a defendant is not required to prove a defense, but only to assert a meritorious defense that it may prove at trial. *Whelan v. Abell,* 48 F.3d 1247, 1259 (D.C.Cir. 1995). A defendant's allegations are considered meritorious if they contain "even a hint of a suggestion" which, if proven at trial, would constitute a complete defense, *Keegel,* 627 F.2d at 374, but they must be "good at law so as to give the fact finder some determination to make." *Am. Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir.1996).  The proposed Answer contains two claimed defenses, neither of which constitutes a complete defense even if they could be proven at trial. What's more, Aargon's motion to set aside the default does not even analyze how its defenses are meritorious or complete.

First, the Answer contains general denials of the facts alleged in the Complaint, and two affirmative defenses:  failure to state a claim upon which relief may be granted and failure to mitigate damages.  In its brief in support of its Motion to Set Aside Default, instead of offering

argument on the viability of these defenses, it argues "within fifteen days of receiving notice of the credit dispute, it deleted the account from Plaintiff's credit report." (Def.'s Brief in Support of Motion to Set Aside Default at 4)(Doc. 23-1.)  General denials to the allegations of the complaint are insufficient to constitute a hint of a meritorious defense.

**A.  Defendant has not demonstrated that failure to state a claim upon which relief may be granted is a meritorious defense.**

Although the Defendant is not required to prove it defenses, listed among its affirmative defenses in its untimely answer, Aargon asserts that the Plaintiff has not stated a claim upon which relief can be granted. (Answer at 4)(Doc. 23-3.)  The Court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Int'l Painters,* 288 F. Supp. 2d at 31 (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, (1984); *Atchinson v. Dist. of Columbia,* 73 F.3d 418, 422 (D.C.Cir.1996)). Aargon makes no analytical link between its defenses and the facts as pled in the Complaint.  As a starting point, the Plaintiff alleges that Aargon is a debt collector and a furnisher of consumer reporting information, and that Mr. Bush is a consumer within the meaning of the consumer protection statutes at issue in this case. (Compl. ¶¶ 3, 10). To prevail on an FCRA claim under 15 U.S.C. § 1681s–2(b), a plaintiff must [notify] the [consumer reporting] agency directly of disputed credit information, and that agency in turn must provide notice to the furnisher of the plaintiff's credit information, which is then obligated to conduct an investigation into the dispute. *Logan v. LaSalle Bank Nat. Ass'n*, 80 A.3d 1014, 1022 (D.C. 2013).  In this case, the Plaintiff has alleged he disputed the inaccurate reporting with Experian, Equifax and Trans Union, thus triggering Aargon's duties under 1681s-2(b).  (Compl. ¶ 13.)

In order to state a claim for Aargon's violation of 15 U.S.C. § 1681s-2(b)(1)(A), the Plaintiff must allege that (1) he disputed the accuracy of information Aargon reported about him; and (2) after receiving the dispute, Aargon did not conduct an investigation about the dispute. The Complaint alleges that Aargon mixed the Plaintiff's information with that of another consumer who was a complete stranger and falsely reported to consumer reporting agencies that Plaintiff had a medical debt that he, in fact, did not owe.  (Compl. ¶¶ 13-14.)  Plaintiff alleges that Aargon refused to either investigate or delete the inaccurate account information as to Trans Union and Experian.  (Compl. ¶¶ 18-21.)  Only Equifax deleted the erroneous account.  (Compl. ¶ 15.)  The Complaint alleges that Aargon's use of the e-Oscar system and automatic consumer dispute verifications (ACDV's) to investigate consumer disputes, and in particular, to investigate Mr. Bush's dispute, to seek out any additional information from Mr. Bush concerning the dispute and to correct the erroneous reporting as to Experian and Trans Union.  (Compl. ¶¶ 52-66.)

Despite the fact that it now has had three months to investigate the allegations of the Complaint irrespective of its ability to obtain local counsel, not to mention its obligation under the Fair Credit Reporting Act to investigate Mr. Bush's disputes at the time they were forwarded to Aargon, in its Verified Answer Aargon neither admits nor denies an important factual allegation in paragaph 15 that only Equifax deleted the account.  (Answer ¶ 15.)  Although the Defendant has denied certain of the allegations, the only way to prevail on a failure to state a claim defense is to demonstrate that the Plaintiff has failed to plead facts that, taken as true, state a plausible claim for relief. *Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007).

In order to state a claim that Aargon violated 15 U.S.C. § 1681s-2(b)(1)(B), the Plaintiff must allege that the Defendant failed to review all the relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2), including all relevant information

regarding the dispute received by the consumer reporting agency. The Plaintiff has done so, by alleging that Aargon has elected to use the e-Oscar system to investigate disputes, and that by doing so it is aware of the meaning of dispute codes. (Compl. ¶¶ 68-70.) Aargon is responsible for reviewing the disputes it receives from the credit reporting agencies and investigating the dispute based on the dispute codes, but it does not review all such information as alleged in the Complaint, which is a violation of the FCRA.

In order to state a claim that Aargon violated 15 U.S.C. ¶ 1681s-2(b)(1)(C) & (D), the Plaintiff must allege that Aargon failed to report the results of its investigation to the credit reporting agencies, which are limited to Trans Union and Experian in this case, because it failed to note that the account was in dispute. (Compl. ¶ 75.) Finally, in order to state a claim that Aargon violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A) the Plaintiff must allege facts that show that Aargon falsely represented the character, amount or legal status of any debt. In this case, Plaintiff has alleged throughout the Complaint that he never owed a George Washington University medical debt that was being reported by Aargon to the credit bureaus. (Compl ¶ 82.) In order to state a claim for violation of 15 U.S.C. § 1692e(8), Plaintiff must allege facts that Aargon communicated to any person credit information which is known or which should be know to be false, including that the debt is disputed. The Plaintiff alleged facts both that the reporting was false because it related to a completely different person and that Aargon continued to report these facts to Experian and Trans Union but failed to note the account as disputed. (Compl. ¶¶ 68-70, 82.)

**B. Failure to mitigate damages is not a cognizable defense to an FDCPA or FCRA claim.**

Finally, Aargon claims as an affirmative defense that the Plaintiff has failed to mitigate his damages. (Answer at 8.) The Defendant has failed to supply a single cognizable authority to demonstrate that "mitigation of damages" is a defense to either an FCRA or FDCPA claim. In fact, the FDCPA is a strict liability statute, and unless there is a bona fide error defense, the Plaintiff has no obligation whatsoever to mitigate damages. Plaintiff is unaware of any legal authority (and defendant does not cite any) that would obligate any consumer to mitigate damages in an FDCPA or FCRA claim. Thus, there is no basis for this claim.

**III. The Plaintiff will suffer legal and actual prejudice if the Defendant is permitted to set aside default.**

The Plaintiff will suffer actual and legal prejudice if the entry of the default is vacated because he has taken a settlement position with the other Defendants based on Aargon's default. Because of Aargon's willful default, the Plaintiff made decisions relative to the credit bureau defendants, which decisions would have been different had the Plaintiff anticipated the re-appearance of Aargon in the case. *Schoonover v. Chavous*, 974 A.2d 876, (D.C. App. 2009.)

Although "delay in and of itself does not constitute prejudice," *KPS & Assocs., Inc. v. Designs By FMC, Inc.,* 318 F.3d 1, 15 (1st Cir.2003), forcing a party to expend further time and money to collect on a claim as to which there are no meritorious defenses unfairly prejudices plaintiff to some degree. *Int'l Painters,* 288 F. Supp. 2d 22 (also citing *Owatonna Tool Co. v. Pan Am. Container Corp.,* 1985 WL 1319, at *4 (S.D.N.Y.1985)). In this case, the Plaintiff diligently tried to engage the Defendant, and when it was utterly apparent that the Defendant would default despite Plaintiff's intercession, the Plaintiff acted in reliance on Defendant's position.

Even if the Court were to determine that the Plaintiff did not suffer legal prejudice at this time, an absence of prejudice to plaintiff does not in itself entitle defendant to set aside the default. *Int'l Painters*, 288 F. Supp. 2d at 31 (citing *S.E.C. v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998)). The court has discretion to deny a motion to vacate if it is persuaded that the default was willful and that the defaulting party has no meritorious defenses. *Id.* (also citing *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 244 (2d Cir.1994) (defendant's willful default and the absence of meritorious defenses were sufficient to support the district court's default judgment without a consideration of prejudice to plaintiff); *Nat'l Credit Union Admin. Bd. v. Gray,* 1 F.3d 262, 265 (4th Cir.1993) (the prejudice factor is of lesser importance than the others when considering a motion to vacate a default judgment); *Matter of Dierschke,* 975 F.2d 181 (5th Cir.1992) (when the court finds an intentional failure to file responsive pleadings, it need not find prejudice to plaintiff); *Marziliano v. Heckler,* 728 F.2d 151, 157 (2d Cir.1984) (affirming district court's refusal to set aside default based on willful conduct and lack of meritorious defenses alone)).

## IV.   Award of Costs & Fees

It is within the court's sound discretion whether to set aside entry of default pursuant to Fed. R. Civ. P. 55(c).  In this case, the Plaintiff has provided a sound basis for the court to exercise its discretion in denying the Defendant's motion.  However, if the court grants the Defendant's motion, the Plaintiff respectfully requests and award of fees and costs associated with responding to the Show Cause Order, preparing and filing the affidavit and request for entry of default, and preparing and filing this opposition in the amount of $3,500.00.

## V.   Conclusion

The Defendant has not demonstrated that the court should exercise its discretion to set aside the entry of default. However, in the event the court grants the Defendant's motion, the Plaintiff respectfully requests and award of fees and costs in the amount of $3,500.00.

Respectfully submitted,

**SYLVESTER BUSH,**

        /s/
Kristi C. Kelly, Esq. (DC Bar No. 974872)
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Telephone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com

Leonard A. Bennett, *Pro Hac Vice*
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of April, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Edward M. Wenger
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001-2113
Telephone: 202.879.3466
Email: emwenger@jonesday.com
*Counsel for Experian Information Solutions, Inc*

Ronald S. Canter
200A Monroe Street, Suite 104
Rockville, MD 20850
Telephone: 301-424-7490
Facsimile: 301-424-7470
Email: rcanter@roncanterllc.com
*Counsel for Aargon Agency, Inc.*

_____/s/_____
Kristi Cahoon Kelly, (DC Bar No. 974872)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 – Facsimile
E-mail: kkelly@kellyandcrandall.com

Case 1:13-cv-01706-CRC   Document 25   Filed 04/16/14   Page 16 of 16